BANK OF MAYNARD *v*. CARROLL.

Opinion delivered May 9, 1932.

*George M. Booth,* for appellant.

*Walter L. Pope* and *W. J. Schoonover,* for appellee.

BUTLER, J. Suit was brought by the appellant bank against the appellees, John L. Carroll, Ben Johnson and A. J. Lewis, to recover on a promissory note executed by them March 19, 1927, and due on November 19 of that year. The appellees, Ben Johnson and A. J. Lewis, defended on the ground that they were sureties, and their liability on the note sued on was discharged because of the acceptance by the appellant of a new note executed on December 6, 1928, signed by John L. Carroll and M. L. Carroll, which was secured by a mortgage executed to the bank by the said Carrolls, and that this note was accepted by the bank in full and complete satisfaction of the note upon which they were the signers.

The testimony taken was directed to this issue, and, upon a hearing, the court found that the plaintiff, Bank of Maynard, had accepted in renewal of the obligation evidenced by the note of March 19, 1927, a note for a similar amount signed by John L. Carroll and M. L. Carroll with knowledge on the part of the bank that the said defendants, Lewis and Johnson, would not sign a renewal, and that, in order to secure the payment of the said note, the bank accepted a real estate mortgage executed by them, and declared that "it is the further finding of the court that the taking and accepting of the said renewal note and mortgage was an alteration of the original contract and obligation, and, further, that the transaction amounted to an accord and satisfaction, and that the note for $800, dated March 19, 1927, should be canceled and surrendered to the defendant, Lewis and Johnson." The court thereupon rendered a decree to that effect, from which the plaintiff bank has prosecuted this appeal.

It was in testimony that, after the note of March 19 became due, Johnson and Lewis refused to sign a renewal note and notified the bank of the refusal of their signatures. Ben Johnson testified that he notified the bank to proceed to collect the note or to take additional security; that he thought the note had been settled, because, as he stated, "I thought I had properly and legally notified the bank to either collect the money or renew the note in some other form."

It is not contended, however, by counsel for the appellees that this notification complied with the requirements of the statute (§ 8287, Crawford & Moses' Digest), or that it effected a discharge of Lewis and Johnson from liability, as indeed it did not. Their contention now is the same as that made in the answer, i. e., that the testimony supports the chancellor in his finding that the taking and acceptance of the renewal note and mortgage effected the discharge of appellees from their obligation on the note sued on, and it is their contention here that the decree and finding of the court must be affirmed as

not against the preponderance of the testimony. Counsel agree that the applicable law is stated in 21 R. C. L. 1053, and in this we think they are correct. That statement is as follows: "It is well settled that the acceptance of a security of a higher nature in lieu of, or satisfaction of, one of an inferior nature operates as an extinguishment of the latter; but, where such security is accepted merely as additional or collateral security of a pre-existing debt, it is clear that the doctrine of extinguishment or merger does not apply. Therefore, taking a collateral security of a higher nature, whether from the principal or a stranger, does not preclude the creditor from suing on the first contract, and consequently does not discharge the sureties on it. A mortgage is not a satisfaction but a security for the payment of a debt. It does not merge or extinguish the original debt, but is merely collateral security. Hence the giving of a mortgage or deed of trust of property to secure a pre-existing debt will not of itself, in the absence of an agreement to that effect, extend the time or discharge the sureties of the debtors."

We are of the opinion, however, that the evidence fails to establish that the acceptance of the note of December 6, 1928, and the mortgage securing it, was in lieu of or in satisfaction of the note signed by the appellee. Buel Loftis was the cashier of the bank at the time of the giving of his testimony, and had been working in the bank since before March 19, 1927. On that date Ben Choate was the cashier and remained such until February, 1930. Both of these testified that they were familiar with the transactions out of which this litigation arose, and stated that at no time did the bank enter into an agreement with Johnson, Lewis or Carroll, that the note of December 6, 1928, and the mortgage were to be accepted in lieu of the note of March 19, 1927; that, when that note fell due, negotiations for its renewal were begun, and the bank was informed that Johnson and Lewis would not sign a renewal note, and, when this was ascertained, the renewal note which Carroll and his wife had signed and the mortgage they had given were pinned to

the original note, and the payments of interest subsequently made credited on that note, and the mortgage was not regarded as having any value; it was a second mortgage, and the lands already mortgaged to the New England Securities Company for their value; that the mortgage was not foreclosed because the bank realized that nothing could be made out of it; that no notice had been given the bank by Johnson and Lewis to sue on the note of March 19, 1927, but indulgence was given Carroll because he was a good man, and they were not advised that Johnson and Lewis did not acquiesce in this indulgence.

The appellees, Johnson and Lewis and John L. Carroll, all testified in the case, and all stated that it was their "understanding" that the renewal note was given to, and accepted by, the bank in satisfaction of the note of March 19, 1927, but, when their testimony is analyzed, it does not dispute the testimony of Loftis and Choate to the effect that there was no agreement made by the bank that this note should be so accepted. John L. Carroll was the individual who gave Johnson the information in December, 1928, that the note which he and Lewis were on had been settled. Carroll stated that it was his understanding that the old note was to be canceled; that the mortgage he gave was his voluntary act without request having been made by the bank that he execute it, and he would not have given the mortgage if he had not thought the note first given was to be satisfied and canceled. In answer to the question, however, as to whether or not the bank understood at the time the mortgage was executed that it would be security for the old debt, additional to the names of Johnson and Lewis, he stated: "I don't know what they thought about it, but it was my understanding that the old note would be released when I executed the mortgage." He did not testify as to how he reached this understanding, but did not dispute the testimony of Loftis and Choate to the effect that the bank had not agreed to the cancellation of the note.

Johnson testified that he refused to sign the renewal note, and claimed that after December, 1928, he did not

know that the bank was still looking to him for payment of the old note until June 12, 1930, and that he thought the note had been settled "because I thought I had properly and legally notified the bank to either collect the money or to renew the note in some other form, and I had not heard of the note for so long that I thought it was all settled." When asked if he knew whether the note of December 6, 1928, and the mortgage given to secure the same were taken by the bank in satisfaction of the old note, he said: "Well, I thought it was because it was made a matter of record over a year before I received this notice in June from the bank that the note was not paid"; and in answer to a question as to whether or not any one ever told him that the new note and mortgage were taken in complete satisfaction of the old note, he stated: "Yes, John L. Carroll told me it was." When the specific question, if the bank ever told him that it was taking the note of December, 1928, and mortgage from Carroll in satisfaction of the note signed by him and Lewis, he answered that he construed a letter received from the bank dated March 23, 1928 (which he said was evidently misdated and should have been March 23, 1929), which he exhibited, as to mean ".they were not holding me any longer." He also exhibited another letter from the bank of April 27, 1928. Neither of these letters was answered, and he stated that these were the last communications from the bank until the receipt of a letter from it in June, 1930, advising that the bank still held the note signed by him and Lewis and could not carry it any longer, and asking if he would like to take up the note or if suit should be filed. He further testified that on receiving this letter he and Lewis went to the bank and found the note he and Lewis had signed, together with the new note given by the Carrolls and the original mortgage they had given dated February 14, 1929, and showing that it had been filed for record March 22 of that year; that they demanded the original note, which was refused.

The interpretation which Johnson testified he gave to the letter of March 23, 1928, does not appear to us to be justified. That letter and the one written April 27, 1928, which merely called attention to the letter of March 23, preceding, and asked for an answer, were all the letters Johnson stated he received. The letter of March 23, 1928, is as follows:

"Dear Sir: Sometime during the first part of December I turned over to John L. Carroll a new note in the amount of $800 for execution, and he stated to me at that time that you said you had rather not sign any new paper. I then told him that the board of directors insisted on my getting the paper renewed up so it would not be necessary for the bank to carry it as past-due paper.

"I spoke to Herbert about it the other day, and asked him whether John had gotten the paper fixed up, and left it with him to deliver to the bank, and he told me that you still had refused to sign the new note. I will appreciate it if you will write me the exact status of the matter so I may talk with our board about it as they are very insistent in the matter of my getting the paper renewed, as the banking department, or rather the examiner, criticize us severely for allowing paper to run past due in this manner. I shall appreciate a line from you about it."

We can see nothing in this letter to indicate any intention on the part of the bank to accept the new note in lieu of the old, or that the signers of the original note should be released. On the other hand, to our minds it indicates a contrary intention. A. J. Lewis appears to have had but little personal knowledge of the transactions leading up to this litigation prior to his visit to the bank in company with Johnson in July, 1930. The effect of his testimony is that he had been informed by Carroll that the note of March 19, 1927, had been settled, and he was at the time of his testimony denying liability because the Bank of Maynard had taken the mortgage from Carroll, and because of the length of time that had elapsed before he was notified by the bank that the note had not been paid. The inference to be gathered from the testimony of

Johnson and Lewis is that, when they learned that a mortgage had been given to secure the indebtedness, they assumed that this was a discharge of their liability. In order to escape liability, it was necessary for Johnson and Lewis to show by a preponderance of the evidence that the note and mortgage given to secure it were in lieu of the first note and accepted as such by the bank. This, we think, they have failed to do. The decree of the chancellor is against the preponderance of the testimony, and it is therefore reversed, and the cause remanded for further proceedings, in conformity with this opinion, and not inconsistent with the principles of equity.